UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

MARK PAPERNO,                                        Index No: 1:20-CV-02414

        Plaintiff,

   -   against –                              **COMPLAINT AND**
                                                                                                                                                **JURY DEMAND**

NEW YORK CITY DEPARTMENT OF EDUCATION,
and MARIE PRENDERGAST, individually and in her
official capacity,

        Defendants.

_____x

    Plaintiff, Mark Paperno, as and for his Complaint and Jury Demand, by and through his counsel, Law Office of Laura Wong-Pan PLLC, alleges against Defendants as follows:

## **PARTIES**

    1.    Plaintiff Mark Paperno resides at 242 13th Street, Apt. 1, Brooklyn New York 11215

    2.    At all relevant times, Mr. Paperno has been a science teacher at the High School for Youth and Community Development ("HSYCD"), located at 911 Flatbush Avenue, Brooklyn, New York, which is part of and overseen by Defendant New York City Department of Education ("NYCDOE").

    3.    At all relevant times, NYCDOE has overseen the New York City system of public schools located throughout the City of New York.

    4.    At all relevant times, NYCDOE has been and continues to be a recipient of federal funds and, as such, is subject to the mandates of the Rehabilitation Act of 1973, 29 U.S.C. §794, et seq., (the "Rehabilitation Act") and Section 503 of the Americans with Disabilities Act, 42 U.S.C. §12203 (the "ADA") which prohibits retaliation against individuals such as the plaintiff

1

herein, for his opposition to Defendant's discriminatory acts against disabled special education students and for his advocacy on behalf of disabled special education students.

5. Section 504 of the Rehabilitation Act, or 29 U.S.C. §794(d), expressly incorporates the anti-retaliation provision of Section 503 of the ADA, 42 U.S.C. §12203, which prohibits defendant from retaliating against "any individual" because he or she opposes any act or practice made unlawful under the ADA.

6. At all relevant times, while plaintiff has served as a science teacher at HSYCD, the Principal of HSYCD has been and continues to be defendant Marie Prendergast.

7. In her capacity as principal of HSYCD, Ms. Prendergast has had the power and authority to negatively affect the terms and conditions of Mr. Paperno's employment with the NYCDOE by retaliating against Mr. Paperno due to plaintiff's opposition to defendants' discrimination against disabled special education students at HSYCD, and for Mr. Paperno's advocacy on behalf of HSYCD students with disabilities.

## JURISDICTION AND VENUE

8. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1332 (federal question), and §1343 (civil rights), and 42 U.S.C. §§12201 et seq. (Title II, ADA).

9. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims arising under New York State law.

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391.

## WRITTEN VERIFIED CLAIM

11. On December 3, 2019, within three months after the accrual of his claims, Plaintiff served the governing body of the NYCDOE, at the office of its corporation counsel, with a written verified claim.

12. Defendants have neglected or refused to make an adjustment or payment therefore for thirty days after the written verified claim was presented.

13. There are no other administrative exhaustion requirements as a precondition to suit.

## FACTUAL ALLEGATIONS

14. Mr. Paperno was a long-term employee of the NYCDOE, assigned to work as a science teacher at HSYCD, commencing employment in September of 2010.

### Protected Activities

15. On several occasions, and most recently in the spring of 2019, Plaintiff objected to the treatment of disabled students at HYSYCD to Principal Prendergast and Assistant Principal Pamela Washington and advocated on behalf of disabled students at his school.

16. Plaintiff complained on several occasions that the school was not meeting its obligations toward the special education students and was not following the terms of the students' Individualized Education Programs ("IEPs").

17. The school is required by Federal and State law and regulations to create an IEP for its students who have been classified by the Committee on Special Education ("CSE") with a disability, and to comply with the terms of the IEP, including providing individualized services and accommodations that the CSE has determined are appropriate and necessary for the disabled students to access a free and appropriate public education.

18. In about June 2017, Plaintiff became aware that paraprofessionals who were assisting with an ELA (English Language Arts) Regents examination were not complying with the terms of the IEPs for the special education students sitting for that exam.

19. At that time, Plaintiff exposed cheating and/or fraudulent conduct during the Regents exam, when he stopped paraprofessionals from providing excessive assistance to

students with disabilities sitting for that exam, since their IEPs only permitted paraprofessionals to read the exam to the students.

20. Following a complaint from the parents of one of the students with an IEP, Plaintiff documented the improper behavior in a written account that, upon information and belief, was provided to the Principal.

21. On or about February 12, 2018, and on at least one prior occasion, Plaintiff reported and/or complained to Defendants that E.B., a disabled student who uses crutches, was not properly safeguarded in the hallway, as he lacked a paraprofessional to escort him, as required by his IEP.

22. On or about May 2, 2018, Plaintiff reported and/or complained to Defendants about continued inappropriate behavior of the same paraprofessional toward E.B., including by behaving in a demeaning manner toward the student, and repeatedly arriving late to class after E.B. arrived.

23. During the 2018-19 school year, Plaintiff taught in a classroom that provided integrated co-teaching services ("ICT"), which means "the provision of specially designed instruction and academic instruction provided to a group of students with disabilities and non-disabled students." 8 NYCRR 200.6(g).

24. The regulations of the New York State Commissioner of Education state that school personnel assigned to each ICT class "shall minimally include a special education teacher and a general education teacher." 8NYCRR 200.6(g)(2).

25. On various occasions during the 2018-19 school year, Plaintiff reported the repeated absence of a special education teacher from Plaintiff's ICT classroom, which violated students' IEPs and the Commissioner's regulations.

26. For instance, on October 18, 2018, he wrote an email stating that the special

education teacher "has been out of my ICT class more than he has been in my class since the beginning of the school year. His absence makes it impossible to meet the IEP requirements of the students in that class."

27. Ms. Prendergast responded by email, acknowledging that the "repeated teacher absences this year has been destabilizing," but warned Mr. Paperno that he must meet the instructional needs of all students, including those with IEPs.

28. Plaintiff also reported that the number of students with disabilities in his classroom exceeded the maximum number of students with disabilities receiving ICT services in a class. as set forth in Section 200.6(g) of the regulations of the Commissioner of Education.

29. On October 29, 2018, he wrote an email to Principal Prendergast stating:

> I was wondering why my 7th period class is so challenging and looked up the SPED regulations and found that we have 18 SPED students in the class when the State Ed law says that it should be 12 SPED students maximum in an ICT class. We need to fix this so my students can get the services that they need.

30. On December 7, 2018, he wrote an email to Principal Prendergast stating that "I have not had anyone cover for [the special education teacher] in my 7th period class for the past three days. Please have someone cover for him when he is gone."

31. By email, Ms. Prendergast told him that he was responsible for the class, regardless of the absence of a co-teacher in the room and, despite his complaints, she did not ensure that a certified special education teacher was regularly in the classroom for most of the school year.

32. In February 2019, Mr. Paperno submitted a complaint to the United Federation of Teachers ("UFT"), alleging that there had not been a special education teacher in his classroom regularly during the school year, and that the number of special education students in the ICT classroom exceeded the maximum permitted by law.

5

33. Shortly thereafter, Mr. Paperno's complaint alleging violations of special education regulations in his classroom was elevated by the UFT to the NYCDOE and/or the Division of Specialized Instruction and Student Support and/or the Superintendent of District 17.

34. On knowledge and belief, in or about the spring of 2019, the NYCDOE investigated Plaintiff's complaint, and in about May 2019 determined that HSYCD had violated the Commissioner's regulations, including by exceeding the maximum number of pupils in an ICT classroom.

35. In or about the spring of 2019, due to the investigation, Ms. Prendergast was required to comply with Federal and State regulations, and to institute corrective action, which included ensuring that the classrooms were adequately staffed.

36. On knowledge and belief, as a result of Mr. Paperno's complaint, HSYCD committed to provide compensatory services to certain students with IEPs who were deprived of special education services listed in their IEPs.

37. The issues that Mr. Paperno reported, as described above, created a danger to public health or safety of disabled students.

38. During the time of Mr. Paperno's employment, no effective remedy was put into place to ensure that the school complied with special education regulations, until he submitted a complaint.

39. At all times, Defendants, and specifically Ms. Prendergast, were fully aware of and had knowledge that Mr. Paperno opposed Defendants' discrimination against disabled special education students and had advocated on behalf of special education students.

### Examples of Retaliatory Actions

40. Defendants retaliated against Mr. Paperno due to his protected activities in opposing discrimination and advocating on behalf of special education students by engaging in a pattern and practice of unlawful retaliatory acts against Mr. Paperno, and culminating in Education Law §3020-a charges, which in their totality constitute a continuous violation of Plaintiff's right to be free from unlawful harassment and discrimination.

41. At all relevant times, Mr. Paperno was singled out by the Principal and other administrators by, among other retaliatory acts, subjecting him to inaccurate observation reports, repeatedly transferring him to new classrooms, and subjecting him to false and trumped up disciplinary charges.

42. Mr. Paperno was treated differently than other similarly-situated employees who did not engage in protected activity.

43. Shortly after his first protected activity, on approximately July 31 and August 31, 2017, respectively, Plaintiff was given a full load of Earth Science classes for the first time in five years and was told to move to a new classroom with little time to prepare before the start of the school year.

44. At this request, he had not been teaching Earth Science, but he had been regularly teaching computer science and other science classes, and had been assigned to the same classroom for at least three years.

45. On August 31, 2018, Plaintiff was moved again, this time to a very small classroom room that was less than 600 square feet, which contained a malfunctioning smartboard, and was full of unusable materials left by prior teachers.

46. The August 31, 2018 move left Mr. Paperno with inadequate time to prepare his

classroom before the start of the school year.

47. Mr. Paperno was moved again in January 2019, with little notice and inadequate time to prepare the room since the room was being used for Regents' exams for the week prior to the date when he was expected to start teaching in that classroom.

48. For many school years, including but not limited to 2013-14, 2014-15, 2015-16, and 2016-17, Mr. Paperno's year-end ratings were all satisfactory, scoring as "effective" during each of those academic school years on his Measures of Teacher Practice Scores (MOTP), and his Annual Professional Performance Reviews (APPR).

49. Starting in school year 2017-18, Mr. Paperno was observed by Ms. Washington, Assistant Principal of Special Education, who had rarely observed him in past years, and he received "ineffective" and "developing" year-end ratings, although he had consistently been rated as "effective" during classroom observations that took place prior to engaging in protected activities.

50. On November 15, 2017, Mr. Paperno was observed by Ms. Prendergast, who had only observed him one time in the past.

51. Following the November 15, 2017 observation, Ms. Prendergast improperly rated him as ineffective, although she verbally commented that he had done a good job explaining rock processes. In her written comments, Ms. Prendergast also praised him for his very good work with ScriptEd, a computer science class he was teaching at the time.

52. On about May 23, 2018, Ms. Washington improperly wrote up Mr. Paperno for failing to provide her with a written lesson plan during an observation, although he was not required to do so in that instance.

53. Plaintiff filed a grievance about the May 23, 2018 disciplinary action, and it was

withdrawn.

54. On about June 5, 2018, Mr. Paperno was assigned to teach five Earth Science classes for the following year.

55. After Mr. Paperno filed a grievance regarding the class assignments, he was reassigned to a more appropriate schedule of four forensics courses and 1 coding course.

56. On about June 6, 2018, Principal Prendergast discontinued the use of ScriptEd, an effective tool used by the Plaintiff in his computer science classrooms. His work with ScriptEd had previously been described as exemplary by Ms. Washington and as "very good" by Ms. Prendergast.

57. At the end of the 2018-19 school year or beginning of the 2019-20 school year, Principal Prendergast recommended to the NYCDOE and/or the Chancellor that it bring formal charges against Plaintiff under Education Law §3020-a.

58. On September 5, 2019, in Executive Session, the NYCDOE approved the recommendation and voted to bring formal charges against Plaintiff.

59. The Section 3020-a charges were in retaliation for Plaintiff having engaged in protected activities under the ADA and Section 504 of the Rehabilitation Act.

60. Such an action would dissuade any reasonable employee from engaging in further protected activity under the law.

61. By letter dated September 12, 2019, the NYCDOE notified Plaintiff that he was reassigned out of the classroom and reassigned to administrative tasks.

62. In or about September 2019, a faculty meeting was held, and Assistant Principal Raizy Silberstein told the faculty that Plaintiff filed a complaint "out of spite" (referring to the complaint to UFT about the violations of special education regulations) and accused him of not

caring about the students. She told teachers that there was less money available for overtime or per-session pay because of Plaintiff's special education complaint.

63. Mr. Paperno was told by one teacher that all the teachers hated him because of what they were told by Ms. Silberstein during the September 2019 faculty meeting.

<u>Service of Written Verified Claim</u>

64. Plaintiff has performed all conditions precedent to commencing this action, including requirements of Education Law §3813.

65. On December 3, 2019, the Plaintiff, through legal counsel, served a written verified claim upon which this action is founded on the governing body of the NYCDOE.

66. The officer or body having the power to adjust or pay said written, verified claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

**FIRST CAUSE OF ACTION**

**RETALIATION UNDER THE REHABILITATION ACT**
**(Against NYCDOE)**

67. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 66 above.

68. The Rehabilitation Act, at 29 U.S.C. §794a(2) expressly incorporates Title VI's provisions, including the anti-retaliation regulation, 34 CFR 100.7(e).

69. Plaintiff need not be disabled to have standing to invoke the anti-retaliation provisions of the Rehabilitation Act.

70. Plaintiff is a schoolteacher who informally and formally advocated for disabled students in his school, for the period from June 2017 through the spring of 2019, including but not limited to the submission of a complaint concerning the repeated absence of a special education

teacher in his ICT classroom.

71. Shortly after, as a direct result of the protected activity of advocating for disabled students, Plaintiff was subject to retaliation in the workplace that would dissuade a reasonable person from lodging a complaint of discrimination in the workplace.

72. Plaintiff was subject to retaliatory actions that were causally related to his protected activity, including but not limited to intimidation and humiliation; alterations of Plaintiff's work assignments; repeated classroom transfers; removing Plaintiff from teaching responsibilities; and subjecting Plaintiff to a 3020-a hearing.

73. As a direct and proximate results of Defendant's willful and intentional discrimination, Plaintiff suffered and will continue to suffer severe mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

74. As a further and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has been compelled to retain the services of legal counsel and has thereby incurred, and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown.

## SECOND CAUSE OF ACTION

### RETALIATION UNDER TITLE II OF THE ADA
### (Against NYCDOE)

75. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 74 above.

76. The ADA anti-retaliation provisions of Title II do not mandate that Plaintiff need be disabled to have standing to invoke the anti-retaliation provisions of the ADA.

77. Plaintiff engaged in protected activity under Title II of the ADA by advocating on

behalf of disabled students in his school.

78. Shortly thereafter, as a direct result of the protected activity of advocating for disabled students, Plaintiff was subject to retaliation in the workplace that would dissuade a reasonable person from lodging a further discrimination complaint in the workplace.

79. As a direct and proximate result of willful and intentional discrimination, Plaintiff suffered and will continue to suffer severe mental anguish and emotional distress, and physical manifestations of stress, and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

80. As a further and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has been compelled to retain the services of legal counsel and has thereby incurred, and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown.

## THIRD CAUSE OF ACTION

**RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND THE NEW YORK CITY HUMAN RIGHTS LAW**
**(Against All Defendants)**

81. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 69 above as if fully stated herein.

82. Retaliation for engaging in protected activity under the New York Executive Law §296 et seq. (NYSHRL) and the New York City Administrative Code §8-107 (NYCHRL) is analyzed under the same framework as the ADA.

83. All of Defendants' practices following Plaintiff's complaints concerning treatment of special education students as described above constituted retaliation against Plaintiff in violation of the provisions of the NYSHRL and the NYSCRL.

84. Plaintiff opposed the deprivation of special education services to students by a public entity, and such practices are prohibited by New York State Executive Law §296 et seq. and New York City Administrative Code, §8-107.

85. Plaintiff's opposition to the deprivation of services for special needs students prompted and/or was a substantial factor in Defendants' actions toward him including, inter alia, decreasing his ratings, repeatedly moving him to inferior classrooms, and instituting proceedings under Education Law §3020-a.

86. Defendants' conduct in retaliating against Plaintiff is prohibited by the New York State Executive Law and the New York City Administrative Code.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that this Court empanel a jury of plaintiff's peers and enter judgment against Defendants in an amount to be determined at trial, inclusive but not limited to compensatory and punitive damages as follow:

(a) Compensatory damages for unlawful discriminatory and retaliatory acts against Mr. Paperno an in amount to be determined at trial, including lost wages and benefits, emotional distress, physical manifestations of stress, anguish, humiliation, embarrassment, loss of career;

(b) Reasonable attorney's fees and costs of prosecuting this action; and

(c) Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: May 31, 2020
Poughkeepsie, New York

Respectfully submitted,

LAW OFFICE OF LAURA WONG-PAN PLLC

By: ____*Laura Wong-Pan*_____
      Laura Wong-Pan (LW8530)
      319 Mill Street
      Poughkeepsie, NY 12601
      Tel: (845) 218-1288
      Fax: (845) 684-0007
      lwp@laurawongpanlaw.com

      Attorney for Plaintiff Mark Paperno